**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cr-20822-KMM

UNITED STATES OF AMERICA,

v.

MAX JERI,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL

This cause is before the Court on Defendant Max Jeri's Motion for New Trial (ECF No. 64).  The Government responded (ECF No. 70).  The motion is now ripe for review.  For the reasons that follow, the motion is denied.

**I.      BACKGROUND**

On October 9, 2015, Defendant Max Jeri was arrested at Miami International Airport after United States Customs and Border Protection ("CBP") Officers discovered over five (5) kilograms of cocaine in Jeri's luggage.  Jeri was charged in a two-count indictment with one count of importation of a controlled substance in violation of 21 U.S.C. § 952(a), and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).  On December 14, 2015, Jeri proceeded to trial, after the Court denied Jeri's Motion to Start Trial on December 17, 2015 (ECF No. 17).

On December 10, 2015 the Court: (1) granted the Government's Motion *in limine* asking the Court to exclude post-arrest controlled calls (the "Controlled Calls" or "Calls") between Jeri and a contact named Fancy in New York; and (2) denied without prejudice Jeri's Motion to

exclude testimony of Special Agent ("SA") Suarez regarding drug courier profiles (ECF No. 34).[1]

On December 14, 2015, Jeri moved to continue trial in order to review video footage of Jeri's suitcases taken by a private film crew at the CBP enforcement area at Miami International Airport (the "Video") (ECF No. 44).  The Video was taken by a production company filming a program on drug seizures at the Miami International Airport.  *See* Gov't Resp. to Mot. to Compel (ECF No. 49).  The Government learned of the Video on December 13, 2015 and produced it to Defense counsel the following day.  Following oral argument on the matter, the Court denied Jeri's motion.  (ECF Nos. 47, 60).

On December 15, 2016, after a one and a half day jury trial, Jeri was convicted on both counts of the indictment.  *See* Jury Verdict (ECF No. 54).  Jeri now moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  The basis for Jeri's motion is that the Court erred in (1) excluding the Video and Controlled Calls; (2) allowing certain of SA Escobar's testimony; (3) allowing certain of SA Suarez's testimony; (4) instructing the jury on deliberate ignorance; (5) failing to instruct the jury of the Defense's theory of the case; and (6) denying Jeri's motions to continue trial.  Def.'s Mot. for New Trial (ECF No. 64).

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides that "upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A motion for new trial is addressed to the sound discretion of the trial court. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987).

---

[1] The Minute Order for proceedings held on December 14, 2015 incorrectly notes that the Court granted Defendant's Motion *in limine* To Exclude Testimony of Government Expert SA Suarez (ECF No. 32).  *See* Min. Order for Proceedings (ECF No. 34).

### III.    DISCUSSION

#### A.    Jeri Is Not Entitled To A New Trial Based On The Court's Exclusion Of The Video and Controlled Calls

Jeri first argues that the he is entitled to a new trial based on the Court's exclusion of evidence, including the Video and the post-arrest Calls.  The four categories in which the court should generally admit defense evidence include the following:

> First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense.  Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain.  Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness.  Finally a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

*United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004).  As will be shown, Jeri is unable to prevail under any of these four theories, as applied to both the Video and Calls.

#### i.   The Video

Jeri contends that the exclusion of the Video warrants a new trial.  His argument centers around two clips, each which last around a minute, and which show a CBP Officer looking through a blue bag–presumably Jeri's carry-on–and then closing the bag.  Jeri argues that this clip impeaches Government witnesses, supports Jeri's claim that he lacked knowledge of the cocaine's presence in the luggage, and places the story presented by the Government in a new light.

As to *Hurn*'s first two categories of evidence, Jeri has failed to show that the Video directly or collaterally pertains to an element of Counts I or II.  *See Hurn*, 368 F.3d at 1363.  To

this, Jeri argues that the Video supports Jeri's defense theory that he lacked knowledge that the luggage contained contraband. The Court disagrees. These short clips which show nothing more than a CBP Officer rummaging through Jeri's carry-on do not pertain to Jeri's own knowledge of what was in the luggage. Even if the Video were to conclusively prove that the CBP Officers did not find cocaine in Jeri's carry-on–which it does not–the question of Jeri's state of mind would still remain unanswered.

As to *Hurn*'s third category, Jeri argues that the Video impeaches CBP Officers Laucerica and Iguina, who testified that the cocaine was found in each piece of luggage. *See* Tr. at 38–39, 71, 81, 94 (ECF No. 60). However to the extent that this clip has any impeachment value (and the Court is doubtful that it does), such evidence is cumulative. The CBP Officers were subject to rigorous cross-examination at trial concerning their alleged missteps in recording where they found the cocaine, and whether the cocaine was found in one bag, or each of the bags. *Id* at 67, 71. Indeed, on cross-examination of CBP Officer Laucerica, Defense counsel elicited testimony that called into question the officer's statement that the officers found purses with cocaine in Jeri's carry-on.[2] Accordingly, as it relates to impeachment, any prejudice to Jeri that resulted from excluding the Video was harmless.

---

[2] The colloquy proceeded as follows:

    Q:    And you just testified that you found three of the leather souvenir purses in Mr. Jeri's carry-on bag, correct?

    A:    Officer Iguina found them and he handed to me. Every item that was inside the bags, it was handed to me by Officer Iguina.

    Q:    Okay. I'm going to show you a copy of your report. Can you please show me this report where you indicated that you found three of the souvenir purses in Mr. Jeri's carry-on?

    A:    (Witness reviewing document.)
            In general when it says inspection of the three bags in the enforcement area with Passenger Jeri as a witness revealing the following items. There was a lot of evidence that we have. There was a lot of items that we

Finally, contrary to Jeri's argument, the Video does not tend to place the story presented by the Government in a "significantly different light." *Hurn*, 368 F.3d at 1363. The story presented by the Government was that Jeri flew to Peru and back, on a ticket paid for by others, knowingly, or with deliberate indifference to the truth, transporting with him suitcases which contained over five kilograms of cocaine. Jeri does not–and indeed cannot–show that the short portion of this Video sheds a different light on that story. The Video does not pertain to Jeri's knowledge of contraband in the bags, does not tend to show that the CBP Officers were lying, and does not even prove that the CBP Officers did not in fact find cocaine in Jeri's carry-on. On the contrary, the Video is unhelpful, cumulative, irrelevant, and potentially misleading footage, and was therefore properly excluded.

### ii.  The Controlled Calls

Jeri also argues that he is entitled to a new trial based on the Court's exclusion of the content of certain Controlled Calls. Prior to trial, the Court granted the Government's Motion *in limine* to exclude the content of the Calls made by Jeri to his contact Fancy and others in New York. The Court held that the Calls constituted hearsay evidence and were otherwise inadmissible under Rule 403 and irrelevant under Rule 401. Jeri's statements on the Controlled Calls were made at the direction of law enforcement, and included expressions of concern about white powder leaking in the suitcases, inquiries as to the smell of the suitcases, and claims of ignorance of the contents of the bags. Jeri now argues that the Court erred in excluding the content of the Controlled Calls.

---

couldn't itemize in each bag, so we just in general explained that on the three bags we found contraband, specifically cocaine.

*Id.* at 70–71.

First, Jeri contends the content of the Controlled Calls, which included Fancy's lack of surprise by Jeri's questions, the fact that Jeri's contacts' numbers were not blocked, the length of the calls, and the fact that the Controlled Calls occurred over several hours and with several different individuals, all establish that Jeri had not known the true contents of the luggage. Yet, as the Government points out, Jeri ultimately did elicit testimony from Government witnesses regarding the fact of the Controlled Calls, the reason for the Calls, and the fact that they occurred over several hours and with different individuals. *See* Tr. at 131, 150–53 (ECF No. 60). Jeri fails to explain how the content of the Controlled Calls accomplish what the Defense failed to prove with the evidence they elicited. Without more, the Court sees no reason why such evidence would have demonstrated actual innocence, nor why the Court's prior order was in error.

Second, Jeri contends that the content of the Controlled Calls would have impeached Government witnesses SA Escobar and SA Suarez. Specifically, Jeri argues that the content of the Controlled Calls corroborated his story to law enforcement, and thus directly contradicted and called into question SA Escobar's testimony that Jeri was untruthful and that Jeri's statements were simply part of a back story provided by the drug trafficking organization ("DTO"). As with Jeri's first argument, such conclusory statements are unconvincing. During the Calls, law enforcement told Jeri what to say. Jeri does not explain how these orchestrated statements would have impeached SA Escobar. To the extent that Jeri argues that Fancy's hearsay responses would have impeached SA Escobar, such responses could just as well have been part of the back story provided by the DTO. Jeri has thus not shown how or why the content of the Controlled Calls could have impeached SA Escobar.

Jeri also argues that the content of the Controlled Calls impeached SA Suarez's testimony regarding the difficulty of conducting controlled calls once a DTO has discovered that a courier was arrested.  Again, the Court recalls the testimony elicited by Defense counsel regarding the Calls.  The jury had every opportunity, given the testimony on the fact of the Controlled Calls, their length, and their purpose, to question the veracity of SA Suarez's testimony and draw conclusions about his credibility.  Jeri has thus failed to show how he was prejudiced by the exclusion of the content of the Controlled Calls and is not entitled to a new trial based on this ground.

### B.        Jeri Is Not Entitled To A New Trial Based On SA Escobar's Testimony

Jeri next argues that SA Escobar's testimony on redirect was impermissible and prejudicial because it constituted expert opinion on an ultimate issue.  Jeri claims that the Government sought to treat SA Escobar as an expert by asking him questions based on his experience and training, and, as a result, the Court should not have permitted SA Escobar to opine on Jeri's truthfulness.

Expert opinion or not, SA Escobar's testimony on cross-examination was elicited after Defense counsel opened the door Government's line of questioning.   Excerpts from SA Escobar's cross-examination illustrate the point:

> Q:      Part of your job as a good investigator is preserving evidence, correct?
>
> A:      Yes.
>
> Q:      Okay.  And the point of that is that the best evidence needs to be presented to the jury, correct?
>
> A:      Okay.
>
> Q:      Is that a yes or a no?
>
> A:      Yes.

Q:     Okay.  Because in reaching a decision, they are entitled to having the best evidence, correct?

A:     That's correct.

Q:     So part of your responsibility is making sure evidence doesn't go missing, correct?

A:     That's correct.

Q:     Doesn't get destroyed, correct?

A:     Right.

Q:     And the best evidence of what someone says would be an audio or video recording of what they say, correct?

A:     Not necessarily.

       . . .

Q:     Now, as federal law enforcement, you have the ability to check phone numbers, correct?

A:     Yes.

Q:     Everybody has heard about wire taps and listening in on calls.  You guys have the ability to contact cell phone carriers and verify phone information, correct?

A:     Correct.

Q:     Okay.  If he had lied about his phone number, that would be an important piece of information, right?

A:     Yes.

Q:     Okay.  But there is no evidence that he lied about his cell phone number?

A:     I have no idea if that number is good or not.

Q:     Okay.  You didn't look into that?

A:     I did not.

Tr. at 121, 126–27 (ECF No. 60).  The relevant portion of SA Escobar's redirect, which Jeri takes issue with, is as follows:

> Q:    On the subject of recordings, Ms. Bharathi asked you about the best evidence of the statement.  Do you remember that?
>
> A:    Yes.
>
> Q:    Do you remember she said isn't the best evidence of a statement if it's audio and video recorded; do you recall?
>
> A:    Yes.
>
> Q:    If someone lies to you and it's audio and video recorded, do you consider that to be valuable evidence?
>
> A:    No, I do not.
>
> Q:    In this case, based on your training and experience, was the defendant truthful in his interview with you?
>
>        . . .
>
> A:    He was not truthful.

*Id.* at 155–56.

Evidently, part of the Defense strategy at trial was to call into question SA Escobar's credibility and the quality of the investigation.  Consistent with this strategy, Defense counsel sought to elicit evidence pointing to SA Escobar's alleged failure to follow up on Jeri's statements and other leads, as well as SA Escobar's failure to record his conversations with Jeri as part of the investigation.  But, having raised the question of the integrity of the investigation, Jeri opened the door to a full development of the subject.  Jeri thus cannot complain that the Government responded by eliciting testimony which explained why SA Escobar conducted the investigation as he did.

Similarly, Jeri objects to SA Escobar's testimony on redirect regarding drug courier back stories. To this, as well, Jeri has no right to complain. The Government had every right to explore the subject of Jeri's truthfulness after Defense counsel elicited Jeri's exculpatory statements to law enforcement on cross-examination.[3] The evidence of drug courier back stories was admissible for the purpose of rebutting the impression which he tried to create, namely, that he truthfully answered law enforcement's questions, and did not know the bags contained contraband. Accordingly, Jeri was not unfairly prejudiced by SA Escobar's testimony.

### C.    SA Suarez's Testimony Did Not Unfairly Prejudice Jeri's Defense

Jeri argues that the Court should not have admitted SA Suarez's testimony at trial regarding drug courier profiles. Specifically, Jeri contends that he was prejudiced when SA Suarez testified that couriers "come from all walks of life," DTOs "enjoy using U.S. citizens" as

---

[3] For example, on cross-examination, Defense counsel elicited the following testimony:

Q:    Okay. In [Jeri's] statement to you, and in his statements to Officer Laucerica, which you also said were repeated to you, he said he has known this woman for 10 years. He was referring to Fancy, correct?

A:    Right.

Q:    That he said that they were close, and they had been friends for 10 years?

A:    I think they had known each other for 10 years.

Q:    Would you like to take a look at your report?

A:    Sure. (Witness reviewing document.)
      Those are statements that were made from Mr. Jeri to Customs and Border Protection.

Q:    Okay. That he and Fancy were friends for 10 years?

A:    Correct.

Q:    And - -

A:    He also told me later on that they were friends during the interview. The actual interview he told me that they had been friends for 10 years.

Q:    So he continued to insist that this woman was his friend for 10 years, they were close, and he thought she would never do something like this to him, correct?
      . . .

Q:    So it's accurate that he said to you and CBP that he thought she would never do something like this to him, correct?

Tr. at 148–49 (ECF No. 60).

couriers, couriers know what they are transporting, and couriers transport in exchange for payment.  Tr. at 165–66, 171, 177 (ECF No. 60).

Where an expert provides testimony on drug courier profiles as background information rather than substantive evidence of guilt, the prejudicial effect is slight.  *See United States v. Hood*, 590 F. App'x 894, 896 (11th Cir. 2014) (no error where agent did not provide his opinion as to whether or not he knew drugs were in defendant's luggage and government did not use drug courier profile as substantive evidence of guilt) (citing *United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983) (no error in admitting drug courier profile testimony where it was used purely for background material on how and why defendant was stopped and searched by custom officers)).  "'What is proscribed is questioning that produces responses suggesting some specialized knowledge of the defendant's mental processes.'"  *United States v. Kalaycioglu*, 210 F. App'x 825, 831 (11th Cir. 2006) (quoting *United States v. Long*, 328 F.3d 655, 666 (D.C. Cir. 2003)).

Here, SA Suarez's testimony describing drug couriers amounted only to background information.  At no point during the relevant testimony did SA Suarez give his opinion as to whether Jeri knew that he was transporting cocaine.  *See Kalaycioglu*, 210 F. App'x at 831 (district court properly admitted expert testimony regarding modus operandi of persons running scams similar to defendant's).  SA Suarez's testimony was not necessary to prove the charges against Jeri, and thus the probative value was slight.  As such "the prejudicial effect of the admission of this testimony, if any, was also slight."  *See Hood*, 590 F. App'x at 896 (citation omitted).  Accordingly, Jeri is not entitled to a new trial based on SA Suarez's testimony.

> **D.      The Court Did Not Improperly Instruct The Jury**

Jeri also argues that the Court's instructions to the jury unfairly prejudiced his defense. Jeri takes issue with both the Court's deliberate ignorance instruction, and the Court's decision not to give Jeri's theory of defense instruction.

As to the deliberate ignorance instruction, such instruction is appropriate "if it is shown that the defendant was aware of a high probability of the fact in question and that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Puche*, 350 F.3d 1137, 1149 (11th Cir. 2003). In this Circuit, "where the evidence supports both actual knowledge and deliberate ignorance, the instruction is properly given." *United States v. Arias*, 984 F.2d 1139, 1144 (11th Cir. 1993) (quotation marks and citations omitted). Deliberate ignorance instruction is thus proper in "cases in which drug couriers have avoided knowledge of the contents of their parcels." *Arias*, 984 F.2d at 1144 (citing *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir. 1984); *United States v. Batencort*, 592 F.2d 916, 918 (5th Cir. 1979)).

The facts here support an inference that Jeri was aware of a high probability that he was transporting contraband and deliberately avoided learning more. At trial, the Government elicited testimony that Jeri had accepted a paid roundtrip ticket from Fancy and agreed to transport bags into the United States when one year prior (in 2014) he refused the same task. Tr. at 112, 138 (ECF No. 60). Significantly, the jury heard evidence that Jeri's reason for refusing to transport bags from Peru into the United States for Fancy in 2014 was because he had seen drug seizures on the news and did not feel comfortable doing what Fancy asked. *Id.* at 112. Moreover, when Jeri was initially stopped, he told CBP Officer Laucerica that the bags contained jackets for his children. *Id.* at 113. Yet after the cocaine was found, Jeri admitted that the bags were for Fancy. *Id.* at 109. The evidence at trial provided ample facts which "point in the

12

direction of deliberate ignorance." *United States v. Adair*, 951 F.2d 316, 319 (11th Cir. 1992) (quotation marks and citations omitted). Thus the instruction was proper.

Similarly, the Court did not err in refusing to give Jeri's theory of defense instruction relating to third party guilt. Jeri proposed the following instruction:

> Mr. Max Jeri has elicited evidence that another person, Fancy Lopez, is responsible for importing and possessing the cocaine that was discovered in this case.
>
> Mr. Jeri has also elicited evidence that Fancy Lopez had opportunity and ability to commit this crime.
>
> You may consider evidence of third party culpability, *i.e.*, that another person is responsible for commission of this crime, as evidence creating reasonable doubt. The government must prove beyond a reasonable doubt that Mr. Jeri, not someone else committed this crime. If it fails to do so, you must find Mr. Jeri not guilty.

Def.'s Proposed Jury Instr. at 2 (ECF No. 37).

Jeri argues that the proposed instruction was appropriate because the facts at trial showed that he was tricked into transporting suitcases by the true owner of the drugs. But Jeri fails to cite any such evidence, and the Court finds no support for the proposed instruction. Further, without supporting evidence, the instruction is misleading. The Court was under no obligation to read to the jury under the guise of an instruction on the law what amounted to nothing more than a closing argument masquerading as an unsupported theory. In effect, the instruction commands the jury to acquit if they find that Fancy was responsible for orchestrating the transport. Defense counsel did not elicit evidence which would make Fancy's involvement in the event mutually exclusive with Jeri's knowledge or guilt. The proposed theory of defense instruction was thus not proper, and Jeri is not entitled to a new trial based on the jury instructions.[4]

---

[4] Jeri also makes a cursory objection to the "party not on trial" instruction, claiming that it was inappropriate to instruct the jury that it did not "matter" if they found that another person was "actually guilty." *See* Def.'s Motion for New Trial at 17 (ECF No. 64). But Jeri misstates the

E.    **Jeri's Constitutional Rights Were Not Violated By The Court's Denial Of His Motions To Continue Trial**

Finally, Jeri argues that Jeri's constitutional right to counsel was violated when the Court denied his motions to continue trial.  As Jeri aptly points out, "[t]he matter of continuance is traditionally within the discretion of the trial judge."  *Ungar v. Sarafite*, 37 U.S. 575, 589 (1964).  Though "[i]n certain limited circumstances," the denial of a request for a continuance may rise to the level of violating a defendant's constitutional rights, such violations must be determined based on the totality of the circumstances, "with particular consideration given to the reasons presented to the trial judge at the time the request is denied."  *United States v. Evans*, 496 F. App'x 950, 953 (11th Cir. 2012) (quotation marks and citations omitted).  Further, the defendant must show that the denial of the motion for continuance resulted in "specific substantial prejudice."  *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995) (citation omitted).

When a defendant claims that a continuance is necessary in order to secure the presence of potential witnesses, the defendant must show "that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant."  *United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir. 1976).  Here, Jeri claims that he was substantially prejudiced by the Court's denial of his Motion to Continue (ECF No. 17) wherein he requested a continuance in order secure potential witnesses including Fancy's sister and Jeri's girlfriend.  Yet at the time Jeri moved for a new trial, he failed to proffer the testimony he hoped that these potential witnesses would offer.  He also did not claim that the potential witnesses would have been available and willing to testify.

---

instruction.  What the Court stated did not "matter" was that "[s]ome of the people who may have been involved in these events are not on trial."  Jury Instr. at 8 (ECF No. 52).

Moreover, Jeri has failed to show the requisite specific substantial prejudice that resulted from the Court's denial of his Motion to Continue in order to review the Video (ECF No. 44). As explained, *supra*, after a review of the Video it is clear that Jeri was not prejudiced by the exclusion of that footage. Accordingly, no substantial prejudice resulted from the Court's denial of Jeri's Motion to Continue.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Max Jeri's Motion for New Trial (ECF No. 64) is DENIED.

Done and ordered in Chambers at Miami, Florida, this 15th day of March, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:    Counsel of record